# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-857

**STATE OF LOUISIANA**

**VERSUS**

**RONALD SPENCER, JR.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 03-187
HONORABLE ANN SIMON, DISTRICT JUDGE
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**MARC T. AMY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

**J. Phillip Haney**
**District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA   70560**
**(337) 369-4420**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Paula Corley Marx**
**Louisiana Appellate Project**
**Post Office Box 80006**
**Lafayette, LA   70598-0006**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Ronald Spencer, Jr.**

**Ronald Spencer, Jr.**
**J.B. Evans Correctional Center**
**500 Routh Street**
**Newelton, LA   71357**

AMY, Judge.

The defendant pled guilty to two counts of armed robbery as well as attempted armed robbery and theft in excess of five hundred dollars. He was sentenced to serve twenty years at hard labor on each of his convictions for armed robbery, fifteen years at hard labor on the conviction for attempted armed robbery, and five years at hard labor on the conviction for theft. All of the sentences were ordered to be served concurrently. The defendant appeals, asserting that the record fails to reflect a plea of guilty to one of the armed robbery charges and also fails to reflect the concurrent nature of the sentences imposed. The defendant further asserts that his sentences were constitutionally excessive. For the following reasons, we affirm and remand with instructions.

### Factual and Procedural Background

According to the factual basis supplied by the State at the plea hearing, on August 10, 2002, the defendant, Ronald J. Spencer, Jr., and two others, Joseph Paul Anthony and Natrish O'Neil, robbed an O'Reilly's Auto Parts store. The defendant acted as a lookout and getaway driver while Mr. Anthony and Mr. O'Neil entered the store armed with dangerous weapons. The men took money from two employees, Leon Neazey and Harold Johnson, who were inside the store.

The factual basis presented by the State at the defendant's plea hearing further stated that on August 27, 2002, the same three men participated in a theft of money from an O'Reilly's Auto Parts store where Mr. O'Neil was an employee. The men faked a robbery, wherein Mr. O'Neil reported that he had been robbed while working at the store. In fact, however, he permitted the other men consensual entry and gave them an amount of money greater than five hundred dollars from the store, which they all shared.

The State's factual background further alleged that on September 12, 2002, the defendant, together with Arthur January and Joseph Paul Anthony, conspired to rob the Regents Bank. Again, the defendant acted as a getaway driver and dropped the two men off near the bank. Armed with dangerous weapons, the two men hid in a nearby field waiting for Laura Bodin, the bank's manager, to open the bank. The robbery was foiled when the men were scared off by a local farmer who was plowing the field. The defendant then picked up the men near the bank.

The defendant was charged by bill of information with two counts of armed robbery, violations of La.R.S. 14:64; one count of theft in violation of La.R.S. 14:67, and; one count of attempted armed robbery in violation of La.R.S. 14:27 and 14:64. He was arraigned on February 13, 2003. The defendant pled guilty as charged on April 10, 2003, in exchange for a recommendation that all of the sentences run concurrently.

The defendant was sentenced to twenty years at hard labor without the benefit of probation, parole or suspension of sentence on each of the two convictions of armed robbery, fifteen years at hard labor on the conviction for attempted armed robbery, and five years at hard labor on the conviction for theft. All of the sentences were ordered to be served concurrently. The defendant filed a motion to reconsider the sentences, which was denied in open court on January 7, 2004. The defendant was granted an out of time appeal on March 30, 2004, and now appeals, asserting the following as error:

     1. The record fails to reflect a plea of guilty to Count 2, Armed Robbery of Harold Johnson; therefore, the conviction and sentence imposed thereto must be vacated.

     2. The minutes fail to reflect the concurrent nature of the sentences imposed.

2

3. The trial court erred in imposing unconstitutionally harsh and excessive sentences for this remorseful non-violent first offender, with a limited role in the commission of the crimes.

The defendant also asserts as error in his pro se appellate brief that the trial court erred in imposing sentences that did not conform to his plea agreement. He asserts that the agreement guaranteed that he would receive a sentence of only one-half of the sentences that his co-defendants received.

## Discussion

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, the court reviews all appeals for errors patent on the face of the record. After reviewing the record, we find there are no errors that require correction.

*Guilty plea*

The defendant relies on the requirement of *Boykin v. Alabama*, 395 U.S. 234, 89 S.Ct. 1709 (1969), that a guilty plea contain an affirmative showing that it is made understandingly and voluntarily. He argues that his conviction and sentence on one of the armed robbery charges must be vacated because "[t]he record fails to reflect a plea of guilty to Count 2[.]"

The record reveals that during the guilty plea colloquy, wherein the trial court addressed the defendant, the following exchange took place:

Q: [By the Court]
    Mr Duhe' [Assistant District Attorney] is telling me that you are charged as a principal to the commission of armed robbery on Leon Neazey on or about August 10th. How do you plead to that charge?

A: Guilty

Q: And on the same date, a principal to the armed robbery of Harold Johnson.

MR. DUHE':

And he is also a principal to the attempted armed robbery of Ms. Bodin who is the manager of Regents Bank.

Q: September 12th, 2002, attempted armed robbery as the principal of Laurie Bodin. How do you plead to that charge?

A: Guilty

Q: How do you plead to the charge of theft by misappropriation or taking of property belonging to O'Reilly's Auto Parts, in an amount greater than five hundred dollars?

A: Guilty.

We note that this portion of the record alone does reflect an absence of an explicit guilty plea by the defendant to count two of the indictment, which is the armed robbery of Harold Johnson. The State urges that "the failure of the transcript to capture Spencer's plea of guilty to the second count of principal to armed robbery is harmless error. The record overwhelmingly establishes Spencer's guilty plea to both counts."

The Louisiana Supreme Court has considered whether an "imperfect" guilty plea transcript can support a conviction. The court held that the entire record, without limitation to the transcript of the plea proceeding alone, may be considered in assessing whether a plea was intelligently and voluntarily entered into with full knowledge of its consequences. *State ex rel. LeBlanc v. Henderson*, 259 So.2d 557 (La.1972). The court disapproved of the requirement that a verbatim transcript of the colloquy appear in the record in order to uphold a conviction as intelligent and voluntary. *Id*. The court stated that in jurisdictions which enforced such a requirement, "the unfortunate lapse of a court reporter defeats the conviction, irrespective of how well the judge handles the guilty plea." *Id.* at 560.

4

In *State v. Shelton*, 621 So.2d 769 (La.1993), the court considered the matter again in reference to the validity of the underlying guilty pleas used as a basis for a habitual offender bill. During its discussion on whether a "perfect" transcript was necessary to prove the voluntariness of a guilty plea, the supreme court stated:

> The dominant thread running through the cases appears only to require that the court must determine from the *entire record* that the defendant was informed of and specifically waived his three *Boykin* rights. We have allowed a guilty plea form to supplement an "imperfect" transcript of the colloquy, i.e. one which reveals the judge and the defendant discussed a waiver of only some of the *Boykin* rights. For example, in *State v. Dunn*, 390 So.2d 525 (La.1980), this court found the record contained a sufficient affirmative showing of a knowing and express waiver where the record contained a transcript of the plea colloquy indicating an explicit waiver of two of the *Boykin* rights and a plea of guilty form signed by the defendant, his attorney, and the judge which contained an express waiver, initialed by defendant, of the third right. Likewise, in *State v. Halsell*, 403 So.2d 688, 690 (La.1981) (emphasis added), we noted that a "colloquy may not be indispensable, as long as the *record* contains some other affirmative showing to support the plea."

*Id.* at 776 (emphasis in original) (footnote omitted). The *Shelton* court upheld the defendant's guilty plea as a knowing and voluntary waiver of rights where only a minute entry and an executed plea of guilty form were submitted to prove proper Boykinization. *Id.*

In *State v. Dunn*, 390 So.2d 525 (La.1980), the trial court inadvertently failed to specifically advise Dunn that he was giving up his privilege against self-incrimination when he pled guilty, although he was informed and agreed to waive his rights to a jury trial and to confront his accusers. The Louisiana Supreme Court upheld his guilty plea as a knowing and voluntary waiver despite the omission. *Id.*

We find the circumstances of *Shelton* and *Dunn* analogous to the present situation, where the word "guilty" was not expressed in the guilty plea hearing transcript. We note further that the evidence contained in the record demonstrates

5

that the defendant intended to plead guilty to count two, even if not captured by the transcript.

We begin by noting that the minute entry for Mr. Spencer's guilty plea hearing states that "[t]he defendant . . . entered a plea of guilty to 2 counts of Armed Robbery, Theft Over $500.00 and Attempted Armed Robbery[.]"

The defendant was clearly made aware of the nature of the charges and the number of counts against him several times during his guilty plea hearing. At that hearing, the trial court specifically asked the defendant:

> Q. Your agreement with the State, is that in return for your plea of guilty to the charge of two counts of armed robbery, and one count of attempted armed robbery, you would not be sentenced today, but I would order a certified criminal history, and set a sentencing date.
>
> The only agreement would be that whatever sentence I gave you would be concurrent. These three charges would run concurrently. Is that the way you understand the agreement?
>
> A. Yes, Ma'am.

Later in the same proceedings, the trial judge told the defendant:

> Q. Mr. Spencer. The Bill of Information against you charges as follows: Ronald J. Spencer, Jr., now, count #1, on or about August 10th, Ronald J. Spencer did knowingly or intentionally commit armed robbery by the intentional taking of property having value from a person of another, which is in immediate control of another, namely Leon Neazey, by use of force or intimidation while armed with a dangerous weapon.[]
>
> Second count, on or about August 10th, in the Parish of Iberia, Ronald J. Spencer did knowingly or intentionally commit a violation of 14:64, armed robbery, by the intentional taking of property having value from the person of another or in the immediate control of another, namely Harold Johnson, by the use of force or intimidation, while armed with a dangerous weapon.
>
> . . . .
>
> [Q.] Those are the four offenses charged in this Bill of Information. Do you understand that?
>
> A. Yes.

After defining the crimes charged against the defendant, the following factual basis was presented on the defendant's two armed robbery counts as follows:

> Next, Your Honor, in Mr. Spencer's matter, the State submits that it would be able to establish that on or about the date alleged in the Bill of Information, that Mr. Spencer with respect to the accounts [sic] involving Leon Neazy and Harold Johnson, Mr. Johnson and Mr. Neazy were employees of O'Reilly Auto Parts and Mr. Spender's [sic] role in that matter, along with Joseph Paul Anthony and Natrish O'Neal (sic), Mr. Spencer drove them to that location and acted sort [sic] as a lookout while Mr. Anthony and Mr. Neal entered the back of the O'REILLY's Auto Part and robbed Mr. Jonson and Mr. Neazy of money.
>
> The evidence would show that Mr. Spencer was aware that they were going to rob that store and that they, in fact, robbed that store.
>
> That would account to the first two counts of armed robbery, Your Honor.
>
> THE COURT:
> Maybe we should stop there –
>
> Q: (The Court) That is what the State says it can prove about your involvement in this matter. I want to ask you if that is true?
>
> A: Yes, Ma'am.

In addition to these spoken exchanges at his guilty plea hearing, the defendant signed a Certificate Outlining Felony Plea Agreement, which stated that he agreed to plead guilty to two counts of armed robbery.

Moreover, at the defendant's sentencing hearing, the trial court stated that "[o]n April the 10th of 2003, he in fact pled guilty to the four charges" and defendant was sentenced on all four counts without objection. Thereafter, on November 13, 2003, the defendant filed a motion to reconsider the sentences and did not raise the issue of being sentenced on a charge that he did not plead to, nor did the defendant raise the issue at the hearing on his motion for reconsideration on January 7, 2004.

In considering these multiple explanations of the specific charges and counts against him, as well as the opportunities for the defendant to offer some form of

7

objection, we find that the record contains a sufficient affirmative showing of a knowing and voluntary plea of guilty to the second count of armed robbery. Thus, this assignment of error is without merit.

*Concurrent Nature of Sentences*

For his second assignment of error, the defendant asserts that the minute entry of the sentencing hearing does not reflect the concurrent nature of the sentences. The record reflects that the plea agreement that the defendant entered into with the State dictated that in exchange for his plea, the defendant would receive a recommendation that the sentences on each of his four convictions be served concurrently.

The transcript of the sentencing hearing reflects that the trial court clearly designated that each sentence was to be served concurrently with the others.[1] However, the minute entry does not indicate the concurrent application of the two sentences imposed on the convictions for armed robbery with each other and with the other two sentences. "[I]t is well settled that when the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied* 00-2051 (La. 9/21/01), 797 So.2d 62; *See also State v. Lynch*, 441 So.2d 732 (La.1983). Consequently, we remand this matter with instructions to the trial court to amend the minutes of the sentencing hearing to

---

[1]The trial court stated:

> On each count of principal to armed robbery, it's the sentence of this court that you serve 20 years at hard labor without the benefit of probation, parole, or suspension of sentence. I give you credit for time served. The sentence will be concurrent with all other sentences.
>
> On the theft, it's the sentence of this court that you serve five years at hard labor. I give you credit for time served. The sentence will be concurrent with all other sentences herein.
>
> For the principal to attempted armed robbery, it's the sentence of this court that you serve fifteen years at hard labor. I give you credit for time served, that sentence to be concurrent with all other sentences herein.

reflect that the two sentences for armed robbery are to be served concurrent with each other and with the other sentences.

*Excessiveness of Sentence*

For his next assignment of error, the defendant argues that the sentences, totaling twenty years at hard labor, are excessive because he is a "remorseful non-violent first offender, with a limited role in the commission of the crimes."

The defendant filed a motion for reconsideration of his sentences, alleging only that the sentences were excessive. Louisiana Code of Criminal Procedure Article 881.1(E) states:

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

In *State v. Mims*, 619 So.2d 1059, 1060 (La.1993), the Louisiana Supreme Court held that when a defendant fails to provide any specific ground for excessiveness upon which the motion is based, "then the defendant does not lose the right to appeal the sentence; the defendant is simply relegated to having the appellate court consider the bare claim of excessiveness."

In reviewing the excessiveness of a sentence, this court has previously stated:

> The standard of review for Louisiana appellate courts in determining whether a sentence levied upon a particular defendant was excessive is the manifest-abuse-of-discretion standard. *State v. Guzman*, 99-1753 (La.5/16/00), 769 So.2d 1158. A trial judge has considerable latitude in imposing sentences within the constraints provided by law. *State v. Thompson*, 02-0333 (La.4/9/03), 842 So.2d 330. However, in *State v. Marshall*, 94-0461, p. 24 (La.9/5/95), 660 So.2d 819, 829, the Louisiana Supreme Court held that "[a] sentence may violate a defendant's constitutional right against excessive punishment even if it is within the statutory limit," *citing State v. Sepulvado*, 367 So.2d 762 (La.1979). Furthermore, under both United States and Louisiana law, a sentence is unconstitutionally excessive if it "1) makes no measurable contribution to acceptable goals of punishment and hence is nothing

9

more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Coker v. Georgia*, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977); *State v. Handy*, 96-2505, p. 1 (La.1/6/97), 686 So.2d 36, 37, *citing State v. Dorthey*, 623 So.2d 1276 (La.1993).

*State v. Wilturner*, 03-719, p. 5 (La.App. 3 Cir. 11/5/03), 858 So.2d 743, 746 (alteration in original).

In accordance with the plea agreement, the defendant pled guilty as a principal to two counts of armed robbery, one count of attempted armed robbery, and one count of theft in excess of five hundred dollars. Louisiana Revised Statutes 14:64 provides that the penalty for an armed robbery conviction is not less than ten years and not more than ninety-nine years at hard labor. The defendant was sentenced to twenty years on each conviction. Louisiana Revised Statutes 14:27(D)(3) provides that for an offense of attempt, a defendant "shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both." Therefore, for his attempted armed robbery conviction, the defendant could have been sentenced to forty-nine and one half years. However, he received a lesser sentence of fifteen years at hard labor. Finally, on the conviction for theft, La.R.S. 14:67(B)(1) provides for a sentencing range of no more than ten years. The defendant was sentenced to five years.

Furthermore, in accordance with the plea agreement, all of the sentences were ordered to be served concurrently. Since the two armed robberies occurred at the same time, the concurrent sentences were appropriate. *See* La.Code Crim.P. art. 883. However, the attempted armed robbery and the theft occurred on different dates in different locations and involved different victims. Therefore, those sentences could have been ordered to be served consecutively to each other and to the sentences

imposed for the armed robberies, which would have exposed the defendant to more than one hundred and fifty years imprisonment. Considered in this light, it is clear that the defendant received a significant benefit from the plea agreement. *See State v. Williams*, 02-707 (La.App. 3 Cir. 3/5/03), 839 So.2d 1095 (noting the substantial benefit the defendant received through a plea agreement in finding his sentence was not excessive).

Given the nature of the underlying convictions, there is no indication that the sentences imposed are a purposeless imposition of pain and suffering or that they are grossly disproportionate to the crimes. *See Wilturner*, 858 So.2d 743. Notably, the defendant substantially benefitted through the plea agreement as his sentencing exposure was significant. Therefore, we find that this assignment of error is without merit.

*Plea Agreement Linking Co-Conspirators' Sentences*

For his final assignment, the defendant argues in his pro se appellate brief that his trial attorney, the assistant district attorney and the sentencing judge had all assured him that his plea agreement guaranteed that he would receive a sentence that was one-half of the length of his co-defendants' sentences. The defendant further alleges that his co-defendants received five-year sentences, with one of them being sentenced solely to probation. The defendant points to the transcripts of his sentencing hearing, which he asserts demonstrate that, "the judge gaurenteed [sic] Mr. Ronald J. Spencer that because of my action of co-operation [sic] and remorsefulness, and not actually being involved in actual commissions, I would receive [sic] half of what my two other co-defendant's recieved [sic]."

Our examination of the record reveals that the defendant's agreement with the state did not contain the guarantee that the defendant suggests in this assignment.

11

The defendant signed a document titled "Certificate Outlining Felony Plea Agreement" which states, in relevant part, as follows:

> **I.   CHARGE:**
> The defendant, RONALD J SPENCER, [sic] agrees to plead guilty to ARMED ROBBERY (2 COUNTS) and ATTEMPTED ARMED ROBBERY[.]   This sentence shall run CONCURRENT with each other[.]
>
> **II.   PLEA AGREEMENT:**
> This defendant, Ronald J Spencer, [sic] will plead OPEN ENDED and the Court will order a certified criminal history and set a sentencing hearing to be held at a later date.   The defendant agrees to testify truthfully at the trial of the co-defendants.

At his guilty plea hearing, the trial court asked the defendant whether anyone made any other promises or representations, other than the plea agreement, in order to get him to plead guilty.   The defendant answered, "No, Ma'am."   The defendant also stated the following at the hearing:

> Q. [By the court] Your agreement with the State, is that in return for your plea of guilty to the charge of two counts of armed robbery, and one count of attempted armed robbery, you would not be sentenced today, but I would order a certified criminal history, and set a sentencing date.
> The only agreement would be that whatever sentence I gave you would be concurrent.   These three charges would run concurrently.   Is that the way you understand the agreement?
>
> A. Yes, Ma'am.
>
> THE COURT:
> Ms. Huddleston, is that the way you understand it, also?
>
> MS. HUDDLESTON:
> Yes, Your Honor.

The assistant district attorney stated at the defendant's sentencing hearing that "[h]e pled open-ended to those charges.   The only agreement by the state was that whatever sentence he received on each of those charges would run concurrent with each other."

12

The defendant offered no proof that the plea agreement included a guarantee that his sentence would be one-half of the length of the sentences received by his co-conspirators. Our review of the record reveals that the only agreement was that any sentences given be imposed concurrently, which the trial court honored. In fact, the defendant and his attorney both agreed at the guilty plea hearing that it was their understanding that the agreement would be for concurrent sentencing, without mention of any further agreement regarding the co-conspirators' sentences or objection to the agreement as recited. Thus, we find that the record does not support a finding that there was an agreement between the defendant and the State which would set the defendant's sentence at one-half the length of his co-defendants' sentences.

We next consider the defendant's assertion that the trial judge assured him that his sentence would not exceed one-half of the length of his co-defendants' sentences. In his statement imposing the defendant's sentence, the trial judge stated the factors the court considered in its sentence, including the following:

> The court does consider in mitigation the cooperation of the defendant with the authorities in that he has taken responsibility for his crime and that he has helped the state in the conviction of the other defendants involved in these crimes. So the court is going to give him mitigation in that the sentence that the court will give him will be one-half of what the court's going to give the other defendants when they come up for trial who actually carried the weapons.

The record contains no indication as to what sentences Mr. Spencer's co-defendants ultimately received. The statement made by the trial judge was merely included within the trial court's recitation of mitigating factors; it was not a reiteration of a condition of the plea agreement.

As previously discussed, at his guilty plea hearing, the defendant in this case did not make any mention of the agreement he now asserts. He has presented no

evidence that his plea of guilty was in any way induced by this promise, nor that he relied on such a promise in making his plea of guilty. Instead, our review of the record reflects that the first mention of the co-conspirators' sentences was at the defendant's sentencing hearing, which occurred approximately seven months after the defendant had pled guilty. Thus, we do not find that the defendant, in pleading guilty, relied on an assurance by the judge that his sentence would be one-half of the length of his co-conspirators' sentences. Accordingly, this assignment of error is without merit.

## DECREE

For the foregoing reasons, the convictions and sentences for two counts of armed robbery, attempted armed robbery and theft in excess of five hundred dollars are affirmed. However, we remand to the trial court with an order to amend the minutes of sentencing to reflect that the sentences for the two counts of armed robbery are to be served concurrently with each other, as well as concurrently with the sentences for attempted armed robbery and theft in excess of five hundred dollars.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS**.