<p style="text-align:center;color:red;">**CORRECTED COPY**</p>

**STATE OF LOUISIANA**         *       NO. 2022-K-0515

**VERSUS**        *

                           **COURT OF APPEAL**

**ERIC E. IRONS**        *

                           **FOURTH CIRCUIT**

                                 *

                           **STATE OF LOUISIANA**

<p style="text-align:center;">* * * * * * *</p>

<p style="text-align:center;">APPLICATION FOR WRITS DIRECTED TO<br/>
CRIMINAL DISTRICT COURT ORLEANS PARISH<br/>
NO. 545-094, SECTION "H"<br/>
Honorable Camille Buras, Judge<br/>
* * * * * *<br/>
<b>Judge Tiffany Gautier Chase</b><br/>
* * * * * *</p>

(Court composed of Judge Tiffany Gautier Chase, Judge Dale N. Atkins, Judge Pro Tempore James F. McKay, III)

Jason Rogers Williams
Brad Scott
ORLEANS PARISH DISTRICT ATTORNEY'S OFFICE
619 S. White Street
New Orleans, LA  70119

       COUNSEL FOR RELATOR, THE STATE OF LOUISIANA

Gregory Carter
1100 Poydras Street
Suite 2990
New Orleans, LA  70163

       COUNSEL FOR RESPONDENT, ERIC E. IRONS

                              **WRIT GRANTED;**
                              **JUDGMENT REVERSED;**
                              **REMANDED**
                              **JULY 28, 2022**

TG
C
DN
A
JF
M

Relator, the State of Louisiana (hereinafter "the State"), seeks expedited review of the July 27, 2022 ruling of the trial court granting an oral motion for mistrial urged by Defendant/Respondent Eric E. Irons (hereinafter "Defendant"). For the reasons that follow, we grant the State's application, reverse the ruling of the trial court, and remand the case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On November 4, 2018, H.G.,[1] a 15-year-old girl, left her home to meet the defendant in a nearby abandoned house. According to H.G.'s prior statements, when she arrived at the meeting location, defendant showed her a gun and shot her in the chest. H.G. was able to return to her home, where her mother called 911. H.G. was transported to a nearby hospital and later identified the Defendant as the person who shot her. As the investigation into the shooting progressed, H.G. revealed to the investigating officers that she and the Defendant had a previous sexual relationship that began when she was 13 and the Defendant was 18.

---

[1] In accordance with La. R.S. 46:1844(W)(1)(a), to keep confidential the identities of the persons who were minors at the time of the offenses, initials have been used in place of their names.

1

On April 1, 2019, the State filed a bill of information, charging the Defendant with three separate counts: carnal knowledge of a juvenile, a violation of La. R.S. 14:80; indecent behavior with a juvenile under 17, a violation of La. R.S. 14:81; and second degree cruelty to a juvenile, a violation of La. R.S. 14:93.2.3.[2] Defendant's attorney appeared on his behalf and filed motions to suppress the evidence; statement(s), and identification. He also filed motions to preserve evidence, discovery and inspection, and a request for exculpatory material. After several mutually agreed upon continuances, the motions were heard by the trial court on November 3, 2021. The trial court denied the motion to suppress evidence, the motion to suppress identification, and found probable cause. Defendant objected to the trial court's ruling.

On July 25, 2022, the morning of trial, defendant filed a "Motion in Limine to Prohibit the State from Introducing Evidence of Other Crimes, Wrongs, or Acts Committed by the Defendant Pursuant to La. Code of Evidence Art. 404(B)." The basis of the motion was that the State failed to provide notice to "the defense of which prior bad acts it seeks to introduce into evidence and upon which grounds." The trial court granted the motion.

The case proceeded to trial, with both the State and the defense presenting opening statements. In his opening statement, the Defendant did not dispute that

---

[2] Count 1 alleged that the Defendant committed cruelty to H.G., a juvenile, on November 4, 2018, which resulted in serious bodily harm. Count 2 alleged that between March 31, 2016 and November 4, 2018, the defendant committed carnal knowledge of a juvenile, H.G. Finally, Count 3 alleged that between March 31, 2016 and November 4, 2018, the Defendant committed indecent behavior with a juvenile, H.G., "a child under the age of seventeen (17) by committing lewd or a lascivious act upon H.G. thereby arousing the desires of the said Eric E. Irons there being an age difference greater than two (2) years between H.G. and Eric E. Irons."

the offense occurred, rather he maintained a defense of "misidentification." Several witnesses testified for the State. On the second full day of trial, H.G. testified for the State. The following is the relevant colloquy of the State's questioning of H.G.:

Q: Do you remember how old you were when that—the first time you met him?

A: I was 12.

***

Q: And when you would get together with Eric, when you would meet up, where would you go?

A: We would go to the abandoned house.

Q: To that same abandoned house on Thayer?

A: Yes, ma'am.

Q: Did you go out anywhere, to the movies?

A: No, ma'am.

Q: Did he take you on any kind of dates?

A: No dates. We didn't go on no dates at all. He actually said he didn't want to go on a date with me because he - - I was too young.

***

Q: And when you would go to that abandoned house, what would happen there?

A: We would have sex, whatever he asked me to do.

Q: When you say "have sex," just generally, can you describe what type of sex you are talking about?

A: Mostly oral sex.

***

Q: Did you ever have sex with Eric when it was more than oral sex?

3

A:     Uh, he - - really raped me that day. I - -

Mr. Carter:

Objection, Judge.  Can we approach?

The Court:

Yes.

(Bench Conference)

The Court:

We're going to take a recess right now, ladies and gentlemen.  Please do not discuss the case with each other.

(The jury exits the courtroom.)

Outside the presence of the jury, Defendant moved for a mistrial arguing that H.G.'s use of the word "rape" violated the trial court's ruling on the Motion in Limine filed on the morning of trial.  He argued that the statement was also prejudicial in that it accused him of the crime of rape.  Defendant maintained that the State failed to properly instruct its witness of the parameters of the trial court's ruling on "other crimes evidence."  The State countered, arguing that it could not have anticipated that H.G. would use the word "rape" and that it believed that her testimony would be consistent with the testimony given to the detectives and in prior statements.  The State pointed out that Defendant was not charged with the crime of "rape" and that H.G. simply used the word to describe what she thought had occurred.  The State requested that the trial court give a corrective instruction. The trial court recognized that H.G., because of her age, could not give lawful consent and pointed out that "certainly there's been no allegation of force or anything like that heretofore." Concerned that the "crime of rape" was now in the

4

minds of the jury, the trial court wondered how to "unring that bell." After hearing further argument, the trial court concluded that "the statement made by the victim was in violation of the court's ruling in the defense Motion in Limine and that no form of corrective instruction could overcome the prejudicial effect of this statement."

The State indicated its request to seek expedited supervisory writs and requested a stay. The trial court granted the stay until 10:30 a.m. on July 28, 2022, set a return time of 3:00 p.m. on July 27, 2022 and issued a *Per Curiam*. This Court received the State's application for expedited consideration and requested that defendant file a response. For the reasons below, we reverse the trial court and remand for further proceedings.

## DISCUSSION

In its sole assignment of error, the State avers that the trial court abused its discretion in granting the Defendant's request for a mistrial. The State submits that a curative instruction would have resolved any undue prejudice, if any, towards the defendant.

La. C. Cr. P. art. 770 provides for a mandatory mistrial when a remark, within the hearing of the jury, is made by the judge, the district attorney, or a court official, and such remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. However, remarks by witnesses fall under the discretionary mistrial provisions of La. C. Cr. P. art. 771. When a witness refers directly or indirectly to another crime committed

5

or alleged to have been committed by the defendant as to which evidence is not admissible, upon request of the defendant, the defendant's remedy is a request for an admonition or a mistrial pursuant to La. C. Cr. P. art. 771.

Unsolicited statements and spontaneous conduct of a witness are not usually grounds for a mistrial. *State v. Newman,* 283 So.2d 756, 758 (La. 1973). Mistrial under La. C. Cr. P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. *State v. Sartain,* 1998-0378, p. 10 (La.App. 4 Cir. 21/1/99), 746 So.2d 837, 845-46. Moreover, mistrial is a drastic remedy which is only authorized where substantial prejudice will otherwise result to the accused. *State v. Andrews,* 2019-0068, p. 1 (La. 1/14/19), 260 So.3d 1202 (quoting *State v. Harris,* 2000-3459, pp. 8-9 (La. 2/26/02), 812 So.2d 612, 617). The decision to grant or deny a mistrial for prejudicial conduct rests within the trial court's discretion and will not be disturbed absent an abuse of discretion. *Sartain*, *supra.*

The State argues that the testimony of H.G. was not purposely elicited, rather it was the improper use of the word "rape" by a seventeen-year-old victim who was simply characterized her understanding of the sexual act. According to the State, a curative instruction is an appropriate remedy, rather than a mistrial. Conversely, Defendant argues that H.G.'s use of the word "rape" implicates a crime and is so prejudicial that he cannot be afforded a fair trial.

The crux of the trial court's reasoning for granting the mistrial was that H.G.'s statement is "in violation of the court's ruling in the defense Motion in Limine." Thus, we consider the relief sought in the Motion in Limine and whether

the trial court abused its discretion in granting the mistrial. The relevant portion of the Motion in Limine states:

> Here, the State has not provided notice that it intends to introduce evidence of other crimes, wrongs, or acts for any of the admissible purposes pursuant to La. Code of Evidence 404(B)(1). Contained within State's discovery is the mention of uncharged criminal acts, other crimes, and purported wrongdoing. Because the State of Louisiana has failed to provide notice to the defense of which prior bad acts it seeks to introduce into evidence and upon which grounds, the defense contends that any and all such evidence be barred from introduction into evidence in this case.

Defendant is charged with carnal knowledge of a juvenile, indecent behavior with a juvenile and second degree cruelty to a juvenile. He is not charged with "rape" and the crime of rape is not a responsive verdict to the charges levied. La. C.Cr.P. art. 814. Counsel for the defense immediately objected to the use of the word "rape." The trial court dismissed the jury and allowed argument from the attorneys. The jury did not hear any further statements from the witness. This Court recognizes the vast discretion of the trial court; however, we must also weigh that discretion with established legal principles. *State v. Vanwhalraven*, 282 So.3d 1153 (La.App. 4 Cir. 10/30/19) and *State v. McMahon*, 391 So.2d 1120 (La. 1980). The harsh remedy of mistrial is not justified when an admonition will preserve the defendant's rights. *McMahon*, 391 So.2d 217 (La. 1980); *State v. Wesley*, 347 So.2d 217 (La. 1977). We find that H.G.'s statement did not unduly prejudice the Defendant to such an extent to prevent a fair trial. In the case *sub judice*, a curative statement will preserve the defendant's rights. This is a more appropriate remedy than imposing the drastic remedy of a mistrial. Likewise, the trial court will instruct the jury as to the specific charges against the Defendant at the close of the case.

7

Accordingly, the trial court's judgment is reversed and the case is remanded for further proceedings.

**WRIT GRANTED; JUDGMENT REVERSED; REMANDED**