# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-468

STATE OF LOUISIANA

VERSUS

FILLMORE WRIGHT

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 18-K-0098-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Van H. Kyzar, and Jonathan W. Perry, Judges.

**AFFIRMED.**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**600 Jefferson Street, Suite 903**
**Lafayette, LA 70501**
**(337) 366-8994**
**COUNSEL FOR DEFENDANT- APPELLANT:**
   Fillmore Wright

**Chad Pitre**
**District Attorney, Twenty-Seventh Judicial District**
**Kathleen E. Ryan**
**Assistant District Attorney**
**P.O. Drawer 1968**
**Opelousas, LA 70571**
**(337) 948-8984**
**COUNSEL FOR APPELLEE:**
   State of Louisiana

**PICKETT, Chief Judge.**

## FACTS

After noticing blood while using the restroom, K.H., the six-year-old female victim, notified her mother, that the defendant, also known as "Grip," had touched her private area. Thereafter, her mother rushed K.H. to the hospital where a physician performed a rape kit and physical examination. The examination revealed K.H. had a clear, vaginal discharge and an unattached hymen. Following a thorough investigation, the defendant was arrested.

On February 27, 2018, the state charged the defendant, Fillmore Wright, by bill of information with two counts of sexual battery of a victim under the age of thirteen, in violation of La.R.S. 14:43.1. Wright entered a plea of not guilty. On August 17, 2018, the state amended the bill of information, specifying with more particularity the dates on which the second count occurred. On October 23, 2019, the state amended the bill of information charging the defendant with two counts of sexual battery of a victim under the age of thirteen, in violation of La.R.S. 14:43.1, with the offense dates of "on or about the 4th day of January in the year of our Lord, Two thousand and eighteen (2018)" and "[o]n or about between May 15, 2017 through August 30, 2017[.]"

Trial commenced on March 9, 2023. The following day, the jury unanimously found the defendant guilty of both counts of sexual battery.

On May 9, 2023, the trial court sentenced the defendant to two concurrent thirty-year hard labor sentences, with twenty-five of said years without the benefit of probation, parole, or suspension of sentence.

Now, the defendant appeals arguing the trial court erred in denying his motion for a mistrial and in imposing a constitutionally excessive sentence.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENTS OF ERROR

1.    The trial court abused its discretion in denying Fillmore Wright's motion for a mistrial based on the State's failure to disclose the factual basis for one of the charges. The defense repeatedly made clear in pretrial filings and hearings that the discovery provided by the State did not include evidence of an act sufficient to convict on Count II. Only at trial, after prompting by the State, did the complaining witness make a claim of a second act to support Count II. This was a complete surprise to the defense. The discovery violation was not harmless and prejudiced the defendant's right to a fair trial.

2.    The thirty-year hard labor sentences on both counts of sexual battery, ran concurrently, are constitutionally excessive.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, the defendant contends the trial court abused its discretion in denying his motion for a mistrial. Specifically, the defendant argues the state failed to disclose the factual basis for the second count of sexual battery, constituting a discovery violation.

On the second day of trial, the state called K.H. to testify. K.H. stated that when she was six years old, her mother took her to the hospital because she was bleeding from her butt. K.H. explained that while she was lying on her stomach playing on her tablet, the defendant went into her room, pulled her pants down, and stuck his finger in her butt, causing her to bleed. K.H. testified the penetration hurt. Thereafter, the state questioned K.H. regarding any other occasions, asking:

**Q.** Did that ever happen again?

**A.** No, ma'am.

**Q.** Had there any time before that that had happened?

**A.** No, ma'am.

**Q.** Had there ever been a time where he had done anything else to you?

**A.** Yes, ma'am.

**Q.** You want to tell us about that?

**A.** So, whenever I was going into the kitchen to get me something to drink, he pulled me into the kitchen and started kissing me.

**Q.** Do you remember how old you were when that happened?

**A.** No, ma'am.

**Q.** Did you tell anybody?

**A.** I don't know.

**Q.** Were you afraid?

**A. Inaudible.**

**Q.** Okay. Did anything else ever happened [sic]?

**A.** Yes, ma'am.

**Q.** What else happened?

**A.** I was sleeping in my bedroom, in my mama bedroom, and then he told me to come in the bathroom, but I didn't listen, then he came in there and pulled my pants down and started licking my private.

**Q.** Was there anybody home when this happened?

**A.** Yes, ma'am.

**Q.** Did you tell anybody when that happened?

**A.** I don't know.

**Q.** Do you remember how old you were when that happened?

**A.** No, ma'am.

3

**Q.** You don't, okay. That time that you just said, when he pulled you in the bathroom and licked your private, that happened the time when he stuck his finger in your private?

**A.** I think so.

**Q.** Do you remember what month that happened in, or day, or was it a holiday? Do you remember any of that?

**A.** No, ma'am.

**Q.** No, okay. Do you remember if it was school time, or if you were off of school?

**A.** I think I was off of school.

**Q.** So, maybe like during the summer?

**A.** Yes, ma'am.

After the testimony of K.H., defense counsel asked the trial judge for a sidebar. Due to the sidebar not being transcribed, we cannot state definitively whether defense counsel moved for a mistrial at that moment. However, shortly after the jury was released to go into deliberations, defense counsel moved for a mistrial and stated the following:

**MR. BIROTTE:**

> Yes, Your Honor. At this time, Antonio Birotte on behalf of Mr. Fillmore Wright, out of an abundance of caution in an effort to protect Mr. Fillmore Wright, Your Honor, we are going to move for a mistrial based on the following:

> Mr. Wright was bill [sic] previously with two counts of sexual battery, and it did prescribe the dates. When we were provided discovery by the State, which we believed was all discovery, and there was no mention of an allegation that Mr. Wright actually pulled a young K.H. into an area and licked her vagina. We believed [sic] that this was the first mention of that on yesterday. We believed [sic] that the billing had been complete making allegations of two counts of sexual battery that had occurred to the knowledge of the State. We believe this is new information, and as such my colleague, Ms. Patsy Duhon stated to the jury in her closing that Count II was based on that licking of the genitals, Your Honor. We believe that -- we know

4

that this information was not turned over to the defense before. We believe it was the first time that this information had come out, therefore Count II could not have been based on that. We believe that there is great likelihood that the jury wouldn't be apprised of this information and could readily vote two counts.

As such, Your Honor, we would move for a mistrial at this time. If the Court should deny such, we would ask that the Court provide a clarifying instruction to the jury distinguishing the two counts acknowledging that this information was provided yesterday.

**THE COURT:**

State's response.

**MS. LEBLANC:**

Yes, Judge. First, the indictment alleges a range of dates, and as the Court is aware, the State is not required to prove exact dates.

In addition to that, closing arguments are not evidence. The burden [ ] to find two counts is up to the fact finders the jury in this case. It's up to them to determine whether or not there was an incident in between that date range on and about that date range. If they find that we have presented sufficient evidence to prove beyond a reasonable doubt that there was one count alleged -- I'm sorry – I mean there was one count committed in the first allegation and one count in the second date range, and that's on or about -- it's a rough estimate -- it's up to the jury to determine that. They are the finders of facts.

Number three, this evidence is inculpatory in nature. In addition to that, it's the risk you have of taking things to trial. We cannot predict everything our witnesses are going to say. It's not a Brady violation. We had no obligation to turn that over, even if we had received that information prior.

Again, it's up to the jury to determine whether or not they want to consider his statements about it being six months as to Count II, or some statement made here in court during trial. Ultimately, they are the finders of facts [sic], and they are the ones to determine whether or not there are two counts between those date ranges.

**THE COURT:**

5

All right. Defense, do you have --

**MR. BIROTTE:**

Your Honor, again, this information was not provided to us in discovery. We believe that the billing was complete charging two counts of sexual battery based on other incidents that the State was alleging that Mr. Wright committed.

Today, it uses or seeks to use the statement provided just yesterday, from Ms. K.H., of a new allegation. The State seeks to use that new allegation provided yesterday, just yesterday, as its Count II.

We find that there would be an unfair prejudice to my client, and we move for a mistrial as such. If the Court shall deny the same, we would ask that the Court clarify -- give a clarifying instruction to the jury, in terms of what those counts were based on at the time that State billed it.

**THE COURT:**

The jury is the finder of facts. The verdict form, especially in specifically Count II, has a range from -- it doesn't say specifically on a certain date. The jury heard all of the testimony in this case. The jury has sufficient jury instructions for them to make a fair and impartial decision in this case. There are no other charges to be read to the jury, and a mistrial is denied.

On appeal, the defendant asserts K.H. provided factual details underlying the allegations for the second count of sexual battery for the first time during trial proceedings. According to the defendant, the second count of sexual battery was based off the statement or "fantasy confession" given by the defendant to the police, not actual evidence provided by the state or any statement by K.H. Moreover, the defendant asserts K.H. repeatedly stated that no other incidents had occurred. Thus, the defendant believes the state knew all along that K.H. planned to testify regarding the second incident at trial, causing prejudice towards him. By doing so, the defendant contends the state violated discovery rules by withholding evidence from him.

Although the defendant acknowledges the evidence was inculpatory, he contends the state was still required to disclose the information because that "was the only evidence that could have led to the conviction of one of the counts." As such, the defendant asserts he was prejudiced and should have been afforded a mistrial.

In brief, the state denies the defendant's allegations, arguing the allegations of the defendant are purely speculative and unsupported by the trial record. The state contends the defendant was provided with the evidence the state had in its possession, which included statements referencing a "second time" wherein the defendant allegedly inappropriately touched K.H. According to the state, even if it had prior knowledge of K.H.'s testimony, it had no obligation to disclose the substance of the testimony to the defense prior to trial because it was not *Brady* material. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). As such, the state contends the defendant's arguments are without merit.

Louisiana Code of Criminal Procedure Article 729.5 gives to the trial court the authority to sanction a party for failure to comply with discovery statutes or orders of the court. The trial court has discretion as to the appropriate sanction, including ordering a mistrial or entering any order short of dismissal as may be appropriate. La.Code Crim.P. art. 729.5(A). "Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial[.]" La.Code Crim.P. art. 775. A mistrial "is a drastic remedy, and except in circumstances in which the mistrial is mandatory, 'is warranted only when a trial court error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial.'" *State v. Andrews*, 19-68, p. 1 (La.

7

1/14/19), 260 So.3d 1202, 1202 (quoting *State v. Harris*, 00-3459, pp. 8 (La. 2/26/02), 812 So.2d 612, 617). A trial court's decision to grant or deny a motion for a mistrial is within the sound discretion of the trial court, and on appeal that decision will not be set aside absent an abuse of discretion. *State v. Hutchinson*, 18-445 (La.App. 3 Cir. 12/12/18), 261 So.3d 927.

This court ruled on a similar issue in *State v. Sepulvado*, 10-435 (La.App. 3 Cir. 3/9/11), 59 So.3d 463, *writ denied*, 11-1151 (La. 11/14/11), 75 So.3d 941. In *Sepulvado*, the defendant was convicted of manslaughter and aggravated arson. After the discovery of new evidence, the defendant filed a motion for a new trial. The trial court denied her motion. On appeal, the defendant asserted that the state failed to timely provide discovery materials, which prejudiced her case. According to the defendant, the state notified the defense of additional witnesses right before the trial commenced, which prevented the defense from being able to thoroughly investigate them. To prevent prejudice to the defendant, defense counsel requested a continuance, or, in the alternative, to exclude the evidence not timely provided by the state. The trial court denied both motions but ordered the state to disclose the newly discovered evidence to the defense and delayed the trial by a day to allow the defense to interview the witnesses and prepare its case. In affirming, this court held the defendant's assignment of error lacked merit because the defense was provided access to the state's files through open-file discovery, the information was given to the defense prior to trial, and the defendant failed to show how she was prejudiced regarding the late disclosures.

We do not find the trial court abused its discretion in denying the defendant's motion for a mistrial in the instant case. Similar to *Sepulvado*, the defense had access to the state's files via open-file discovery and was provided

with all of the evidence, including a statement wherein the treating physician documented K.H. "told her mother that this was the second time it happened." Although defense counsel argued that the state had additional information regarding the second incident prior to trial, we note the trial record does not support counsel's allegation. Moreover, the defendant provided detectives with a written statement admitting he inappropriately touched K.H. on a different occasion, which provided the basis for the change in offense date on the bill of information. The trial court did not abuse its discretion in denying the defendant's motion.

This assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the defendant argues the concurrent, thirty-year hard labor sentences imposed by the trial court are constitutionally excessive. The defendant contends he was a first felony offender and a productive member of society.

Defendant failed to object to the sentences imposed and failed to file a motion to reconsider. Louisiana Code of Criminal Procedure Article 881.1 provides the mechanism for preserving the review of a sentence on appeal:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

9

Thus, under some jurisprudence, the defendant is precluded from appealing his sentence. *See State v. Bamburg*, 00-675 (La.App. 3 Cir. 11/2/00), 772 So.2d 356; *State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-578 (La. 1/31/03), 836 So.2d 59; *State v. Duplantis*, 13-424 (La.App. 3 Cir. 11/27/13), 127 So.3d 143, *writ denied*, 14-283 (La. 9/19/14), 148 So.3d 949.

However, this court has previously reviewed claims of excessiveness where no motion to reconsider sentence was filed or objection made. In those situations, this court has performed a bare excessiveness review. *State v. Jackson*, 14-9 (La.App. 3 Cir. 6/18/14), 146 So.3d 631, *writ denied*, 14-1544 (La. 2/27/15), 159 So.3d 1066; *State v. Soriano*, 15-1006 (La.App. 3 Cir. 6/1/16), 192 So.3d 899, *writ denied*, 16-1523 (La. 6/5/17), 219 So.3d 1111; *State v. Price*, 16-899 (La.App. 3 Cir. 4/5/17), 216 So.3d 304; *State v. Debarge*, 17-670 (La.App. 3 Cir. 2/7/18), 238 So.3d 491.

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v.*

> *Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d
> 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067.
> The relevant question is whether the trial court abused its
> broad sentencing discretion, not whether another
> sentence might have been more appropriate. *State v.
> Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*,
> 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar
> crimes may provide some insight, "it is well settled that
> sentences must be individualized to the particular
> offender and to the particular offense committed." *State
> v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991).
> Additionally, it is within the purview of the trial court to
> particularize the sentence because the trial judge
> "remains in the best position to assess the aggravating
> and mitigating circumstances presented by each case."
> *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957,
> 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, 13-771, p. 4–5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005–06 (first alteration in original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Louisiana Revised Statutes 14:43.1, in pertinent part, defines sexual battery as:

> [T]he intentional touching of the anus or genitals of the victim by the
> offender using any instrumentality or any part of the body of the
> offender, directly or through clothing, or the touching of the anus or
> genitals of the offender by the victim using any instrumentality or any
> part of the body of the victim, directly or through clothing, when any
> of the following occur:
>
> . . . .

(2) The victim has not yet attained fifteen years of age and is at least three years younger than the offender.

The enhanced penalty for the offense of sexual battery on a victim under the age of thirteen years when the offender is seventeen years of age or older is twenty-five to ninety-nine years imprisonment at hard labor, with at least twenty-five years of the sentence to be served without benefit of parole, probation, or suspension of sentence. La.R.S. 14:43.1(C)(2). As such, the defendant received a lower-range sentence.

At sentencing, the state requested the trial court to consider, in aggravation, the defendant's conduct, deliberate cruelty to the victim, and status as the victim's cousin as well as the victim's age and vulnerability. In mitigation, defense counsel urged the trial court to consider the defendant's status as a first offender. Then, the trial court stated:

**THE COURT:**

> The jury in this case was selected on March 8, 2023. The trial was scheduled for March 9th and 10th 2023 for two days. The jury in this case returned the verdict in about forty minutes from the time of deliberation. Revised statutes 14 section 43.1 of course, defines sexual battery and in this case, the penalty is a minimum twenty-five up to ninety-nine years at hard labor with the minimum of twenty-five years being served without the benefit of probation, parole, or suspension of sentence. In this case, the Court's gonna [sic] sentence Filmore Wright on both counts, each count for thirty years at hard labor of which twenty-five years of each sentence should be served without the benefit of probation, parole, or suspension of sentence. That's on each count concurrently. The statute also says on 43.1 and section 4, that upon completion of the term of imprisonment imposed in accordance with paragraphs two and three of this section, the offender shall be monitored by Department of Public Safety and Corrections through the use of electronic monitoring equipment for the remainder of his natural life. He's consigned to the Department of Corrections and have [sic] his sentence[] carried out, credit for time served from date of arrest forward on each count, concurrently. Mr. Wright has a right to seek post-conviction relief which we'll [sic] prescribe after the

passage of two years when the sentence becomes final and [sic] any appellate or Supreme Court.

In *State v. D.S.J.*, 08-1555, pp. 6–7 (La.App. 3 Cir. 6/24/09), 15 So.3d 1188, 1193 (footnote omitted), this court stated:

In 2006 La. Acts No. 103, § 1, the sentencing provisions for sexual battery, La.R.S. 14:43.1(C); second degree sexual battery, La.R.S. 14:43.2(C); oral sexual battery, La.R.S. 14:43.3(C); pornography involving juveniles, La.R.S. 14:81.1(E); and molestation of a juvenile, La.R.S. 14:81.2(E), were amended or enacted to provide for a mandatory minimum sentence of twenty-five years at hard labor, with at least twenty-five years of the sentence to be served without benefit of parole, probation, or suspension of sentence, when the victim of the offense is under the age of thirteen and the offender is seventeen years of age or older. This act was known as the Mary Jean Thigpen Law and within that act, the legislature also provided that the penalty for indecent behavior with a juvenile under the age of thirteen by an offender seventeen years of age or older would be imprisonment for not less than two nor more than twenty-five years, with at least two years of the sentence to be served without benefit of parole, probation, or suspension of sentence. La.R.S. 14:81.

. . . .

Additionally, in 2006 La. Acts No. 325, § 1, the legislature stated the following:

The Louisiana Legislature has long recognized the need to protect our most innocent and defenseless citizens and has enacted statutory provisions to protect children from sexual offenders and predators. Louisiana has some of the strictest penalties for sex offense violations and some of the most extensive provisions for sexual offender and sexual predator registration and notification in the United States. The Louisiana Legislature recognizes the tragedy associated with the story of Jessica Lunsford who at the age of nine was abducted, abused, and murdered by a convicted sexual offender. Motivated by the tragedy associated with Jessica Lunsford, the Florida Legislature enacted the Jessica Lunsford Act which provided for a minimum twenty-five-year sentence for child molesters and lifetime monitoring following incarceration. The Louisiana Legislature in enacting the provisions of this Act seeks to incorporate those provisions into the Louisiana Law.

13

A mandatory minimum sentence is presumed to be constitutional. *State v. Rogers*, 07-427, p. 4 (La.App. 3 Cir. 10/31/07), 969 So.2d 707, 710. Defendant argues imposition of the mandatory minimum sentence makes no allowance for considering a defendant's conduct, injuries suffered by the victim, or the sentencing guidelines. Regardless, the legislature exercised its prerogative to protect children under the age of thirteen from sexual predators when enacting 2006 La.Acts No. 103, § 1. Thus, we find the mandatory minimum sentence for sexual battery is not excessive on its face.

In affirming, this court held the imposition of the mandatory minimum sentence was not excessive considering the defendant committed a sexual act against his own daughter, which, in turn, violated a position of trust.

In *State v. Davis*, 52,453 (La.App. 2 Cir. 2/27/19), 265 So.3d 1194, the second circuit upheld a thirty-year hard labor sentence, of which twenty-five years were to be served without the benefit of parole, probation, or suspension of sentence, for a conviction of sexual battery. The defendant, who lived with his sister, committed sexual acts on his nine-year-old grandniece while she stayed at their house. The victim notified her mother, and then, the defendant was indicted on charges for first degree rape, sexual battery of a victim under the age of thirteen, and indecent behavior with juveniles of a victim under the age of thirteen. Subsequently, the jury found the defendant guilty on all charges. The trial court sentenced the defendant to life imprisonment for first degree rape, thirty-years at hard labor with twenty-five years without benefits for sexual battery, and twenty years for indecent behavior. The defendant appealed, arguing his sentences were excessive. On appeal, the second circuit upheld the sentences due to the age of the victim, the length of time the defendant abused the victim, the trauma the victim suffered, and the position of power exercised by the defendant.

Based on the foregoing factors, a review of the record, and jurisprudence, we find the trial court did not abuse its sentencing discretion. Here, the defendant was

in a position of power as the victim's cousin, who the family trusted. The defendant also wrote in his statement that the victim "wanted" him to touch her inappropriately as if the six-year-old victim could consent to any sexual acts. Moreover, the defendant engaged in inappropriate sexual acts with the victim on more than one occasion. We find the defendant's sentences are not constitutionally excessive.

This assignment of error lacks merit.

## CONCLUSION

The defendant's convictions and sentences are affirmed.

**AFFIRMED.**